UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,        :

    -against-        :        10 Cr. 798 (PAC)

AMAURY LOPEZ *et al.*        :

                    Defendants.        :

------------------------------------------------------------x

**SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO GOVERNMENT'S APPLICATION
TO DISQUALIFY COUNSEL**

**INTRODUCTION**

In response to the government's earlier application to disqualify present counsel from continuing to represent defendant Amaury Lopez ("Lopez"), we submitted an affidavit and a memorandum of law, dated October 25, 2010 (ECF Document 8), in which we showed that the potential conflicts identified by the government are waivable. Earlier this month, the government filed a superseding indictment that charges Fabio Morel ("Morel"), who had previously been charged in a separate indictment in which he was represented by present counsel, as a co-defendant with Lopez and others in a count charging a conspiracy to possess and distribute cocaine. In this memorandum, we will show that the government's exercise of its power to obtain a superseding indictment in this manner does not alter the conclusion, consistent with precedents of the Court of

Appeals, that the conflicts identified by the government can be waived by Lopez and Morel after receiving appropriate warnings and advice.[1]

It is our expectation that, following a *Curcio* proceeding, Lopez will express his desire to continue to be represented by present counsel and his willingness to waive any potential conflicts, and that Morel will indicate a desire to obtain new counsel to represent him with respect to the joint indictment and a willingness to waive any theoretical conflict that may arise from present counsel's continued representation of Lopez. For the reasons discussed below, Lopez and Morel should be permitted to make their own, informed decisions regarding the exercise of their constitutionally-protected right to counsel of choice.

## ARGUMENT

### THE CONFLICTS IDENTIFIED BY THE GOVERNMENT DO NOT FALL INTO THE RARE CATEGORY OF CONFLICTS THAT ARE UNWAIVABLE

As discussed in our previous memorandum, the right to counsel of choice, while not absolute, has a constitutional dimension and consequently should not be obstructed by a court other than in the most extreme circumstances. *See, e.g., United States v.*

---

[1] The government's actions may, however, form the basis for a motion to sever. *See United States v. Carrasco*, 968 F.Supp.2d 948, 951 (S.D.N.Y 1997) (observing that government's conduct in indicting defendant separately and then joining him in a different indictment suggests forum-shopping and "does not emit a pleasant odor," court grants severance).

2

*Cunningham*, 672 F.2d 1064, 1070 (2d Cir.1982); *United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir.1979); *United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973); *United States v. Bernstein*, 533 F.2d 775, 788 (2d Cir.1976). When the government seeks disqualification, a court should recognize a presumption in favor of permitting the defendant to proceed with his counsel of choice. *Wheat v. United States*, 486 U.S. 153, 164 (1988). Unless that presumption is overcome by a serious threat to the integrity of judicial proceedings, a court should not "assume too paternalistic an attitude in protecting the defendant from himself," because even where the choice seems "woefully foolish" to the court, "the defendants' choice is to be honored out of respect for them as free and rational beings, responsible for their own fates." *United States v. Curcio*, 694 F.2d 14, 25 (2d Cir.1982).

Even if the defendants contemplated joint representation at the same trial – and they do not – their choice would require an inquiry by the Court so that it could assure that each defendant's right to counsel was protected, *see* Fed. R. Crim. Pro 44(c)(2), but would not require disqualification. In *Wood v. Georgia*, 450 U.S. 261, 272 (1981), where one attorney represented three defendants at a single proceeding, but no waiver had been obtained, the Supreme Court held that a remand was required so that the trial court could ascertain whether the joint representation had affected the attorney's strategic decisions to the detriment of his clients. As the Court subsequently clarified in *Mickens v. Taylor*, 535 U.S. 162, 171 (2002), the remand instruction meant only that the trial court was to

3

determine whether the performance of counsel had been adversely affected by the conflict and, if it had not, the joint representation would not invalidate the conviction. This was so because, in the multiple representation context, the mere "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), cited in *Mickens*, 535 U.S. at 168-69. *See also Cuyler*, 446 U.S. at 351 (concurring opinion of Brennan, J) (while defendants are entitled to representation by attorneys who are free from conflicts, "defendants usually have the right to share a lawyer if they so choose"), citing *Holloway v. Arkansas*, 435 U.S. 475 (1978). In *Holloway*, the Court had held that prejudice must be presumed if a defendant is *forced* to accept joint representation over his objection. 435 U.S. at 489.

Because Morel intends to obtain new counsel to represent him in connection with the superseding indictment, the present case will not entail multiple, concurrent representation, but will implicate only the ethical provisions applicable to an attorney's duty to a former client. Rule 1.9 (a) of the Rules of Professional Conduct provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Although it has not been established that the interests of Lopez and Morel are "materially adverse" – and we submit that they in fact are not – we agree that Morel should receive advice regarding all potential conflicts so that the Court can be assured that his consent to

4

his former attorney's representation of Lopez is informed and voluntary. Clearly, the Rule cited above contemplates that a properly-informed client can waive potential conflicts in the circumstances present here.

In our earlier memorandum, we cited the Court of Appeals' recent observation in *United States v. Perez*, 325 F.3d 115, 126 (2d Cir. 2003), that there are only a "very narrow category of cases" in which attorney conflicts should be deemed unwaivable. Closer consideration of *Perez*, in which the potential conflicts were similar to (and, if anything, more severe than) those alleged here, makes clear that this case does not fall within that "narrow category."

Perez was arrested and charged with violating the currency-reporting law when aeresol cans containing over $200,000 in cash were found in his luggage as he was preparing to board a flight to the Dominican Republic. He was employed as a paralegal by an attorney named Pagan, who represented him in connection with the currency-reporting charge. Pagan also represented a client named Almonte, who had been arrested eight days before Perez because aeresol cans containing more than $200,000 in United States currency were discovered in his luggage as he prepared to board a flight to the Dominican Republic. The government contended that Perez's knowledge that the aeresol cans contained currency could be inferred from his access to facts about Almonte's case, and that Pagan was a potential witness with regard to the information Perez had about

Almonte's case, and also, because he was Perez's employer, to shed light on Perez's statement to authorities that he was traveling "on business." 325 F.3d at 119-20.

The Court of Appeals held that neither Pagan's representation of Almonte, nor the potential that he might be called as a government witness established a conflict that was unwaivable. With respect to Pagan's simultaneous representation of the two defendants, the Court concluded:

> In the present case, Perez has proffered no facts on which it could be concluded that Pagan had an unwaivable actual conflict of interest based on the representation of both Perez and Almonte. Seeking to analogize his circumstances to the extraordinary actual conflict at issue in [*United States v.*]*Schwarz*, [283 F.3d 76 (2d Cir.2002)],Perez states that Pagan was "blinded by his own substantial self-interest in that he stood to gain a considerable amount of monies if he remained counsel to both defendants" (Perez brief on appeal at 22). That statement, however, is conclusory and unsupported by any citation to the record, and we have seen nothing whatever to indicate that Pagan had anything approaching the sort of fiscal self-interest that was present in *United States v. Schwarz*. There was nothing to indicate that Pagan had a continuing relationship with, or an exceptionally lucrative retainer from, Almonte. There was also nothing to suggest that the proceedings in the trial of either Perez or Almonte would have repercussions at the trial of the other. Nor was Pagan himself accused of being involved in the money smuggling activities of either Perez or Almonte.
>
> In sum, the conflicts cited by Perez were only potential, not actual, and they involved the rather routine discrete problems that arise when counsel's loyalty is divided among multiple clients. Such conflicts can be knowingly and intelligently waived, and we see no basis for concluding that the district court erred in not finding that the dual representation here produced a conflict that was unwaivable.

> There was the possibility that either Perez or Almonte
> might be offered a cooperation agreement by the government,
> with potentially beneficial treatment of the offeree
> conditioned upon that defendant's inculpation of the other
> defendant. This posed a potential conflict, but one whose
> likelihood a defendant could assess and knowingly and
> intelligently decide to waive. Perez received a full explanation
> of the potential conflicts from the magistrate judge; he also
> received advice from members of the Defense Bar
> Association task force (*see* Jan. 29 Tr. at 7-13; Jan. 30 Tr. at
> 10); and he was repeatedly offered – and apparently declined
> – the opportunity to consult with other independent counsel
> (*see, e.g.*, Jan. 29 Tr. at 35-36; Jan. 30 Tr. at 6). At each
> hearing, Perez repeatedly stated that he wanted to retain
> Pagan as his attorney.

325 F.3d at 127-28.

The *Perez* decision also made clear that the government's claim that defense counsel might be called as a government witness was a matter that could be resolved prior to trial, and that, by doing so, a court can obviate concerns about conflicts that could theoretically arise based on an attorney's dual role as advocate and witness. Thus, the Court of Appeals held that:

> We also reject the contention that Pagan had an unwaivable
> conflict of interest because he was a potential witness for the
> government at trial. The record shows that the government's
> motion to disqualify Pagan so that he could be called as a
> government witness was denied several months prior to trial.
> The government, in its initial letter to the court and in its
> motion to disqualify Pagan, had stated that it wished to show
> Perez's employment by Pagan when Pagan represented
> Almonte, and that it wished to call Pagan as a witness to rebut
> Perez's (inferred) statement to customs officials on his own
> arrest that he was traveling on behalf of Pagan. However, it
> then transpired that the fact that Pagan was Perez's employer

7

was undisputed and was to be stipulated. ( See, e.g., Perez's Objections to Disqualification at 4-5; July 20 Tr. at 10.)

Similarly, in the present case, the government has not demonstrated that counsel's testimony will be necessary to establish any fact that will be in dispute, or that cannot be established by stipulation or by evidence other than counsel's testimony. Particularly in view of the Second Circuit's admonition that courts should "guard against the tactical use of motions to disqualify [based on the advocate-witness rule] . . . " *Murray v. Metropolitan Life Ins. Company*, 583 F.3d 173, 178 (2d. Cir. 2009), because they are "often interposed for tactical reasons," *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983), this Court, like the district court in *Perez*, should surely resist the government's effort to dictate Lopez's right to counsel of choice by claiming that present counsel's testimony will be required at trial.

If the conflicts in *Perez* were deemed waivable, a similar conclusion is surely warranted in the present case, which involves potential conflicts that are, if anything, less severe than those in *Perez*. Further weighing against present counsel's disqualification is the fact that counsel has represented Lopez for eight years and has become intimately familiar with facts relevant to this and similar investigations involving this long-time client. *See* Affidavit of Ivan Fisher (ECF Document 8). In *United States v. Cunningham*, the Court of Appeals explained the significance of such a factor:

> In the case of Cunningham the balance tips decidedly toward honoring his retention of Tigar [Cunningham's attorney]. Cunningham's interest in having Tigar represent him is

8

> particularly strong. Unlike many defendants who retain counsel only upon arrest or indictment, Cunningham has relied on Tigar for more than six years in a substantial number of investigations, prosecutions, and related litigations. Tigar's success on behalf of Cunningham, obtaining the dismissal of four criminal indictments and the invalidation by the United States Supreme Court of a state statute, has naturally enhanced Cunningham's confidence in Tigar. Tigar represented Cunningham throughout the six-year IRS investigation and is apparently thoroughly familiar with all nuances of the government's case, which includes allegations of a conspiracy spanning nearly a decade. The disqualification of Tigar from any further role in Cunningham's defense in this case would not merely defeat Cunningham's abstract right to be represented by counsel of his choice; it could subject him to real prejudice in this criminal prosecution.

672 F.2d at 1070-71. In view of that factor, the Court of Appeals held that the district court's disqualification of counsel was reversible error, notwithstanding that Tigar had previously represented an unindicted co-conspirator in the pending case.

In *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir 1975), the Court of Appeals similarly reversed a conviction where the district court had prevented two defendants from exercising their right to choose representation by an attorney who, in a related criminal case, had previously represented three individuals whom the government intended to call as witnesses. The Court of Appeals held that, in failing to give the defendants an opportunity to waive potential conflicts, "the district court did not give sufficient weight to the [defendants'] rights." 524 F.2d at 592. *See also United States v. Stein*, 410 F.Supp.2d 316, 328-29 (S.D.N.Y. 2006) (relying on *Perez* and *Cunningham*, district court rejected government's application to disqualify law firm that had previously

9

represented an alleged co-conspirator who had agreed to testify for the government as a cooperating witness, as well as an unidentified co-conspirator; in doing so, the court noted that disqualification would deprive the defendant of representation by attorneys who had spent years as the defendant's counsel, during which they had developed a "significant body of knowledge about the case" and "a 'very close working relationship'" with the defendant).

In the present case, there is similarly a long history of a close working relationship between counsel and Lopez – one in which counsel has successfully resolved prior investigations of his client and has developed substantial familiarity with facts, circumstances, and potential defenses that will enable him to most effectively represent Lopez in the present matter. In recognition of our courts' respect for the value of such attorney-client relationships, and of the constitutionally-protected right of defendants to make their own knowing and intelligent decisions about the manner in which they wish to be represented in a proceeding at which their liberty is at stake, this Court should reject the government's effort to deprive the present defendants of their right to make such a choice.

## CONCLUSION

For the reasons discussed above, and in our earlier papers, the Court should conclude that the conflicts alleged by the government are waivable, and it should permit defendants Lopez and Morel, after being properly advised, to exercise the right to proceed with counsel of choice.

Respectfully submitted,

/s/
IVAN S. FISHER
125 East 50th Street
New York, New York 10022
(212) 517-5000
*Attorney for Defendants*
*Amaury Lopez and Fabio Morel*

December 27, 2010