UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                :

AMAURY LOPEZ, JR. and FABIO MOREL,    :

              Petitioners,    :

    -against-    :

UNITED STATES OF AMERICA,    :

              Respondent.    :

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/20/2017__

16 Civ. 3342 (PAC)
10 Cr. 798 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner Amaury Lopez, Jr. ("Lopez, Jr.") and *pro se* petitioner Fabio Morel ("Morel")

(together, "Petitioners") were convicted by a jury after an eight-day trial of a conspiracy to

distribute cocaine, and possession with intent to distribute cocaine. Their convictions and

sentences were affirmed on appeal. *United States v. Lopez*, 572 Fed. App'x 1 (2d Cir. 2014).

Petitioners now move, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the

convictions and sentences based on the Supreme Court's decision in *Alleyne v. United States*,

133 S. Ct. 2151 (2013); Lopez, Jr. additionally argues that his trial counsel was constitutionally

ineffective for numerous reasons.

The Court DENIES the motions. *Alleyne* does not apply retroactively on collateral

review, and Morel's petition is otherwise untimely. Lopez, Jr.'s ineffective assistance of counsel

claim is meritless, and the Court also DENIES as futile his subsequent motion seeking leave to

amend his § 2255 motion.

1

## BACKGROUND

The Government charged Lopez, Jr. and Morel with one count each of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Count One); and with one count each of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (Counts Two and Three). ECF 14.[1]

Ivan Fisher ("Fisher") initially represented Morel after his arrest in April 2010. *See* ECF 9 at 2. Fisher also represented Lopez, Jr. after his arrest in October 2010. *See id.* at 3–4. When a superseding indictment in September 2010 joined Morel and Lopez, Jr. as co-defendants, the Government sought to have Fisher disqualified as counsel for Lopez, Jr. based on potential conflicts of interest, including: (1) his previous representation of Morel; (2) his status as a potential fact witness, regarding his possession of a hotel surveillance videotape of events leading to Morel's arrest; and (3) his status as the subject of a federal criminal tax investigation brought by the United States Attorney's Office for the Southern District of New York. *See* ECF 9; Jan. 19, 2011 Tr. On January 19, 2011, the Court held a *Curcio* hearing at which Lopez, Jr., represented by conflict-free counsel, confirmed his awareness and understanding of, and waived any objection to, these potential conflicts. *See* Jan. 19, 2011 Tr. Fisher represented Lopez, Jr. throughout pre-trial proceedings and at trial; Morel was represented by separate counsel. *See id.*

Approximately two weeks before trial, the Government moved *in limine* to introduce recordings, made in 2009, of co-defendant Amaury Lopez, Sr. ("Lopez, Sr.")[2] telling a co-conspirator and confidential witness, "AM," that Lopez, Jr. directed the murder of a man whom

---

[1] All ECF citations in this Opinion & Order refer to the corresponding criminal docket, 10-CR-0798.

[2] Lopez, Sr. died in prison after being convicted and during the pendency of his appeal. *See* ECF 163. His appeal was withdrawn; and the Second Circuit remanded to the District Court with instructions to dismiss Lopez, Sr.'s indictment. ECF 164.

he believed had stolen $500,000 from Lopez, Jr.'s organization. *See* Sept. 6, 2011 Tr. at 5–6. After argument, the Court granted the Government's motion to admit the recordings as direct evidence of the conspiracy and Lopez, Jr.'s leadership role. *See id.* at 44.

The Government also moved to admit evidence of an uncharged murder, in 2004, of "an individual who was suspected of stealing money, narcotics proceeds, from one of the coconspirators, who will be a cooperating witness in this trial." *Id.* at 6. The Government asserted that the cooperating witness' testimony would show that the individual was "also suspected of plotting to steal monies from Lopez, Jr.," and that Petitioners "concocted a plan orchestrated by Lopez, Jr. to have this person killed . . . to perpetuate th[e] conspiracy." *Id.* at 6–7. Fisher stated he had been aware of the uncharged murder "for some time," but was surprised at the alleged connection to Lopez, Jr. *Id.* at 20–22. He argued that the uncharged murder evidence was prejudicial, and that the disclosure of the related 3500 material was untimely. *See id.* at 20–25, 32–38. The Court instructed the Government to produce the 3500 material that evening, and scheduled a conference on September 9, 2011. *See id.* at 44.

At the subsequent conference, Fisher initially indicated he was not seeking an adjournment; but that he might request one, if the Government could not provide him certain information about the uncharged murder; he later confirmed that the Government had provided such information, and that he was satisfied and did not request an adjournment. *See* Sept. 9, 2011 Tr. at 3, 13. Counsel for both Morel and Lopez, Sr. requested an adjournment, which the Court denied. *See id.* at 6–7, 13.

On the morning of the first day of trial (September 12, 2011), the Government disclosed that it had commenced a witness intimidation investigation of Lopez, Jr. *See* Gov't Mem. at 18–21. The Government had recorded statements Lopez, Jr. made to a cooperating witness, another

3

inmate at the Metropolitan Correction Center ("MCC") (the "MCC Recordings"). *See id.* The Government explained that its "Trial Team" had not reviewed, and did not intend to introduce, the MCC Recordings; and that further, the "Trial Team" had been walled off from the investigation to preclude prejudice arising from access to any privileged information in the MCC Recordings. *See id.* at 19. On September 14, 2011, Fisher moved to dismiss the indictment on the grounds that the investigation violated Lopez, Jr.'s Sixth Amendment right to counsel and right to a fair trial, causing irreparable prejudice; he also requested an evidentiary hearing. *See id.* at 20. After briefing and oral argument, the Court decided not to hold a hearing; and denied the motion, "concluding that Lopez Jr. had failed to present a valid claim of prejudice arising from the Trial Team's access to that information." *Id.*

During the eight-day trial, the Government presented thirteen witnesses, including several law enforcement witnesses and two cooperating defendants; seized narcotics; narcotics proceeds; guns; documents; and audio recordings. The jury found Petitioners guilty; and specifically found that the conspiracy charged against Petitioners in Count One involved 5 kilograms or more of mixtures and substances containing cocaine; and that the distribution of, or possession with intent to distribute, charged against Lopez, Jr. (Count Two) and Morel (Count Three) involved 500 grams or more of mixtures and substances containing cocaine. *See* Trial Tr. at 1286–88.

The Court sentenced Morel to concurrent terms of 300 months' imprisonment on June 6, 2012, and sentenced Lopez, Jr. to concurrent terms of life imprisonment on July 19, 2012. ECF Minute Entry 06/06/2012; ECF Minute Entry 07/19/2012.

Petitioners appealed the judgments of conviction and sentences, and several of this Court's decisions; the Second Circuit issued its Mandate, dated October 23, 2014, affirming the convictions. ECF 167 at 1. It found no error in the introduction of the uncharged murder

4

evidence, nor in the admission of recorded conversations between Petitioners and a confidential source. *Id.* at 3. There was no error in the Court's decision not to hold an evidentiary hearing to examine any potential prejudice stemming from the "Government's purported access to aspects of Lopez, Jr.'s trial strategy," allegedly contained in the MCC Recordings. *Id.* The Second Circuit affirmed this Court's determination that such an argument presented "neither a coherent nor a cognizable argument establishing that he potentially suffered prejudice at trial." *Id.* at 3–4. Finally, the Second Circuit rejected Lopez, Jr's argument that the disclosure of the uncharged murder 3500 material was untimely and denied him a fair trial: "Lopez, Jr.'s trial counsel [i.e. Fisher] both disclaimed a request for an adjournment and stated that he was satisfied with the material the government provided prior to trial." *Id.* at 4.

Petitioners now move based on *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Lopez, Jr. additionally claims he was denied his Sixth Amendment right to the effective assistance of counsel because Fisher: (1) failed to request a trial continuance after the Government's MCC Recordings disclosure; (2) failed to request a trial continuance after the Government disclosed its intent to introduce the uncharged murder evidence; (3) represented Lopez, Jr. despite an undisclosed conflict of interest that was neither knowingly nor intelligently waived; (4) failed to object to the jury's access to transcripts of recorded conversations and to request a cautionary instruction; (5) failed to properly investigate and call "AM" as a witness; (6) failed to raise a Confrontation Clause objection to the Government's introduction of recorded conversations between "AM" and Lopez, Sr. regarding Lopez, Jr.'s role in a murder; and (7) conveyed an unreasonable prognosis of chance of success at trial and failed to advise Lopez, Jr. of his sentencing exposure.

5

## I.    Legal Standards

### A.  Timeliness of § 2255 Habeas Petitions

"Section 2255 petitions are subject to a one-year limitations period, which in most cases runs from 'the date on which the judgment of conviction becomes final.'" *Anderson v. United States*, 612 Fed. App'x 45, 46 (2d Cir. 2015) (quoting 28 U.S.C. § 2255(f)(1)). An otherwise-untimely petition is proper if filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

### B.  Ineffective Assistance of Counsel

To state a claim of ineffective assistance of counsel, a defendant-petitioner must show two things: (1) counsel's representation was deficient and "fell below an objective standard of reasonableness" according to "prevailing professional norms"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

The first requirement "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* Thus, counsel's reasonable trial strategy decisions do not amount to ineffective assistance. *See United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992), *cert. denied*, 507 U.S. 998 (1993); *see also United States v. Green*, 1996

WL 665719, at *4 (2d Cir. Nov. 14, 1996) ("Ineffective assistance of counsel is not established simply by showing that a strategic decision, viewed in hindsight, was unwise.").

To meet the second requirement, a petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The showing "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

Failure to demonstrate either requirement is fatal to a petitioner's claim. *See Strickland*, 466 U.S. at 697. Courts may dispose of unmeritorious claims solely on the grounds that the petitioner was not prejudiced, regardless of whether the counsel's conduct was sufficiently unprofessional. *See id.*

## C. § 2255 Evidentiary Hearings

"A defendant seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he has a "plausible" claim.'" *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)). But where "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Puglisi*, 586 F.3d at 213 (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b)). Moreover, courts need not presume the credibility of factual assertions "contradicted by the record in the underlying proceeding." *Id.* at 214. "[A]llegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner," and it is within the court's discretion to determine whether a hearing is required. *Chang v. United States*, 250

7

F.3d 79, 85–86 (2d Cir. 2001) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). Further, "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor*, 647 F.3d at 494.

## II. Analysis

### A. Petitioners' *Alleyne* Contentions

*Alleyne* held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155. Petitioners argue that *Alleyne* applies retroactively in the § 2255(f)(1) and (f)(3) contexts.

But while "[this] argument is not technically foreclosed by precedent: . . . neither the Supreme Court nor the Second Circuit has expressly barred district courts from applying *Alleyne* retroactively for purposes of § 2255(f)(3) . . . every court to consider the issue has concluded [that] the case for *Alleyne*'s retroactivity is unpersuasive."[3] *Gil v. United States*, No. 14-CV-1336 (KMW), 2015 WL 4617235, at *3 (S.D.N.Y. Aug. 3, 2015); *see id.* at *3–4 (collecting cases analogizing *Alleyne* to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which the Second Circuit's held in *Coleman v. United States*, 329 F.3d 77, 82 (2d Cir. 2003) does not apply retroactively on collateral review for purposes of § 2255(f)(3), to conclude that *Alleyne* "was essentially an extension of *Apprendi*" and "is not sufficiently transformative to merit retroactive application").

Moreover, even if such a claim were permitted, it would be meritless.[4] Petitioners contend that *Alleyne*'s requirement was violated because the jury did not "find that it was

---

[3] The Second Circuit has rejected *Alleyne*'s retroactivity in the § 2255(h) context of second or successive habeas petitions. *See United States v. Redd*, 735 F.3d 88, 89 (2d Cir. 2013).

[4] Morel's petition also fails because it is untimely. His petition is dated May 12, 2016, almost two years after the Second Circuit affirmed his conviction and sentence on July 2, 2014. *See* § 2255(f)(1). The non-retroactivity of

reasonably foreseeable to [Petitioners] that the offense would involve 5 kilograms or more of
mixtures and substances containing cocaine" and thus "did not determine beyond a reasonable
doubt the specific quantities attributable to [Petitioners.]." Morel Br. at 5; *see* Lopez, Jr. Br. at
16. The jury specifically found that "the conspiracy . . . involve[d] 5 or more kilograms of
mixtures of substances containing cocaine." Trial Tr. at 1287. That finding is sufficient to
support the mandatory minimum sentence to which Petitioners were subject, and complies with
*Alleyne. See* 21 U.S.C. § 841(b)(1)(A); *United States v. Jimenez*, 586 Fed. App'x 50, 56 (2d Cir.
2014) (rejecting alleged *Alleyne* violation where jury did not determine what quantity of drugs
defendant conspired to possess) (*"Alleyne* does not require that a jury find drug quantities relied
on by the court in selecting a sentence within the statutory bounds, as the Sixth Amendment does
not apply to 'factfinding used to guide judicial discretion in selecting a punishment within limits
fixed by law.'" (quoting 21 U.S.C. § 841(b)(1)(A))). Petitioners cannot rely on this argument to
support their § 2255 motions.

## B. Lopez, Jr.'s Ineffective Assistance of Counsel Claims

As an initial matter, Lopez, Jr.'s claims are procedurally barred. "Failure to adequately
present an argument in the initial proceedings (including direct appeal) is classified as procedural
default." *Bloomer v. United States*, 162 F.3d 187, 191 (2d Cir. 1998). Such default can be
excused only where the petitioner demonstrates "(1) that some objective factor external to the

---

*Alleyne* precludes Morel's timeliness argument under § 2255(f)(3). Equitable tolling is unavailable, as Morel has
not shown "that extraordinary circumstances prevented him from filing his petition on time [and that he] acted with
reasonable diligence throughout the period he seeks to toll." *Rivera v. United States*, 448 Fed. App'x 145, 146 (2d
Cir. 2011) (internal quotations omitted). Though a petitioner's actual innocence may overcome the habeas statute of
limitations, the exception "applies to a severely confined category: cases in which new evidence shows it is more
likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 133 S. Ct.
1924, 1933 (2013) (internal quotations and citations omitted). Morel cites no new evidence to support his assertion
of actual innocence, and he cannot meet this standard. *See* Morel Br. at 4–6.

9

defense impeded counsel's efforts to raise the claim at an earlier proceeding, and (2) actual prejudice resulting from the errors of which he complains." *Id.* (internal quotations and citations omitted). Courts generally do not apply this rule to § 2255 petitioners alleging ineffective assistance of counsel, however, "since many defendants are represented by the same attorney at trial and on direct appeal [and] it would be unrealistic to expect that attorney to identify and attempt to persuade an appellate court that he/she had committed errors of a constitutional magnitude entitling the client to a new trial." *Id.* at 191–92. But where, as here, the petitioner was represented by new counsel on direct appeal, "and the ineffective assistance claim is based solely on the record developed at trial," failure to raise the claim on direct appeal "will subject him to the cause-and-prejudice test, if the claim is raised subsequently in a habeas petition." *Id.* at 192.

All but one of the grounds on which Lopez, Jr. brings this § 2255 petition are based entirely on the record developed at trial.[5] Lopez, Jr. was represented by new counsel on appeal. He has not shown any objective factors that impeded appellate counsel from raising these issues on direct appeal; nor has he demonstrated any prejudice, as explained in detail in the following analysis. Indeed, consideration of three grounds is barred by the record in this case: the Second Circuit already considered and rejected Lopez, Jr.'s challenges related to the MCC Recordings (Claim 1); the uncharged murder evidence (Claim 2); and the Confrontation Clause challenge to covert recordings (Claim 6).

---

[5] Lopez, Jr. does not specify when he learned that Fisher had been amidst disciplinary proceedings during trial, the topic of the "undisclosed conflict of interest" Claim 3 below. The Second Circuit decision finding no abuse of discretion in the Committee on Grievances for the United States District Court for the Southern District of New York's decision to strike Fisher's name from the roll of attorneys admitted to practice in its court, and describing the procedural and factual history of the underlying proceedings, is dated July 22, 2014. *See Fisher v. Committee on Grievances*, 759 F.3d 200 (2d Cir. 2014). Even assuming this was unknown at the time of Lopez, Jr.'s appeal and could not have been raised, it does not constitute ineffective assistance of counsel for the reasons described below.

Notwithstanding the Court's determination that Lopez, Jr.'s claims are either barred or waived, the Court will consider each of the seven grounds on which Lopez, Jr. now claims ineffective assistance of counsel. The Court determines that Lopez, Jr. fails to show that Fisher's representation fell below objective standards of reasonableness or prejudiced the outcome of his criminal proceeding. His § 2255 motion therefore must be denied.

## 1. Failure to Request Trial Continuance in Light of Government's Disclosure of the MCC Recordings

Lopez, Jr. contends that after the Government disclosed the existence of the MCC Recordings, Fisher should have requested a continuance to "thoroughly investigate," "properly litigate the possibility of any prejudicial impropriety[,] . . . examine the possible disqualification of the prosecution team, and to re-evaluate proceeding to trial." Lopez, Jr. Br. at 5. He alleges that Fisher "had no time to digest, comprehend and evaluate whether or not [Lopez, Jr's] Sixth Amendment right to counsel was violated," Lopez, Jr. Reply at 5, by the MCC Recordings, in which he contends he discussed "his posture regarding plea negotiations, trial strategy discussions he had with counsel and a preview of the proposed cross-examination by trial counsel of a key cooperating witness." Lopez, Jr. Br. at 4.

But Fisher's decision not to request a continuance was a strategic one entitled to a strong presumption of effectiveness, and Lopez, Jr. provides no evidence, other than his own conclusory assertions, to suggest that the decision was unreasonable. *See Strickland*, 466 U.S. at 689; *Eisen*, 974 F.2d at 265.

Besides, this issue has already been decided; and is not appropriate for review again under § 2255. The failure to request a continuance did not inhibit Lopez, Jr. from raising and litigating – unsuccessfully – the underlying issue twice. This Court already considered and

11

rejected Lopez Jr.'s argument that any prejudice resulted from the MCC Recordings when it denied his motion to dismiss the Indictment on this ground. *See* Gov't Mem. at 20. The argument was raised on appeal and was rejected by the Second Circuit. *See* ECF 167 at 2–3 (affirming this Court's determinations that "no evidentiary hearing was necessary" and that "Lopez, Jr. has advanced neither a coherent nor a cognizable argument establishing that he potentially suffered prejudice at trial"). Obviously Lopez, Jr.'s appellate counsel had time to review and further examine the issue, and Lopez, Jr. presents no new facts showing that actual prejudice resulted and/or that a continuance would have created a "reasonable probability" that the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Court rejects Lopez, Jr's claim that he was denied effective assistance of counsel due to Fisher's failure to request a continuance after the MCC Recordings disclosure.

## 2. Failure to Request Continuance Upon Government's Disclosure of Intent to Introduce the Uncharged Murder Evidence

Lopez, Jr. insists that Fisher should also have requested a continuance after the Government disclosed its intent to introduce the uncharged murder evidence. *See* Lopez, Jr. Br. at 5–8. As proof that such evidence "clearly confused" and "had a substantial influence on the jury," Lopez, Jr. cites the facts that his co-defendants' counsel requested a continuance, and that the jury sent out notes during deliberation "inquiring about the murder testimony in a drug conspiracy." *Id.* at 7–8.

This argument is unsupported. Lopez, Jr. relies solely on his conclusory assessment that a continuance was necessary for counsel to "comprehensively digest and explore the murder allegations and thoroughly investigate and find witnesses to rebut" the cooperating witness' testimony. *Id.* at 8. His co-defendants' motions seeking a continuance – which this Court denied

12

– constituted one of "countless ways to provide effective assistance." *Strickland*, 466 U.S. at 689. Fisher had a number of days to review the 3500 material, and after doing so, stated he was satisfied and disclaimed a request for an adjournment. *See* Sept. 9, 2011 Tr. at 3, 13. The decision was a strategic, objectively reasonable one, and Lopez, Jr.'s disagreement with such cannot satisfy the first *Strickland* prong. *See Stickland*, 466 U.S. at 689; *Eisen*, 974 F.2d at 265.

Moreover, such failure did not cause any prejudice. Indeed, this Court's denial of co-defendants' continuance requests at the same juncture undermines Lopez, Jr.'s claim. *See United States v. Thornhill*, 34 F. Supp. 3d 334, 369 n.4 (S.D.N.Y. 2014) (counsel's failure to request a continuance failed prejudice requirement because, among other reasons, "there is no reason to believe that the Court would have granted the requested continuance"). Further, the issue has already been decided by the Second Circuit. The Second Circuit held that no error existed in admitting the evidence at trial, ending the inquiry. *See* ECF 167 at 3. Besides, Lopez, Jr.'s allegation that the jury notes demonstrate prejudice is conclusory and insufficient. *See Pham*, 317 F.3d at 182.

The Court rejects Lopez, Jr's claim that Fisher's failure to seek a continuance based on disclosure of the uncharged murder evidence amounted to ineffective assistance of counsel.

### 3. Conflict of Interest Based on Ongoing Disciplinary Investigation

An ineffectiveness claim can be grounded on one of three types of conflicts: *per se*, actual, or potential. *See United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004). The Second Circuit generally finds *per se* conflicts "only where trial counsel is not authorized to practice law and where trial counsel is implicated in the same or closely related criminal conduct for which the defendant is on trial." *Id.* at 103 (internal citations and quotations omitted). Actual conflicts exist "when the interests of the defendant and his counsel diverge with respect to a material

13

factual or legal issue or to a course of action." *Martinez v. Kirkpatrick*, 486 Fed. App'x 158, 160 (2d Cir. 2012) (internal citations and quotations omitted). Potential conflicts "arise if the interests of the defendant may place the attorney under inconsistent duties at some time in the future. To violate the Sixth Amendment, an actual conflict must adversely affect the attorney's performance, while a potential conflict must result in prejudice to the defendant." *Id.* (internal citations and quotations omitted).[6] If a petitioner establishes an actual conflict, he must then show a resultant "lapse in representation . . . by demonstrating 'that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Williams*, 372 F.3d. at 106 (quoting *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994)).

Lopez, Jr. contends that although this Court's *Curcio* hearing addressed three potential conflicts of interest, it did not examine Fisher's concurrent disciplinary proceedings in the Southern District of New York, which were unknown to Lopez, Jr. at the time. *See* Lopez, Jr. Br. at 8–9. He alleges that Fisher's "personal interest in combatting the disciplinary allegations . . . coupled with the other issues raised by the Government," created a conflict "by virtue of [Fisher's] preoccupation with the several investigations." *Id.* at 9.

Fisher's disciplinary proceedings do not constitute a *per se* conflict. *See Williams*, 372 F.3d at 102. Lopez, Jr. does not express how his interests diverged from Fisher's regarding a "material factual or legal issue or to a course of action," *Martinez*, 486 Fed. App'x at 160, nor does he articulate any "plausible alternative defense strategy or tactic" that Fisher failed to

---

[6] Although an actual conflict may exist where counsel is "being criminally investigated by the same United States Attorney's office that was prosecuting [the defendant]," *Armienti v. United States*, 234 F. 3d 820, 824 (2d Cir. 2000), the Court extensively inquired into Lopez, Jr.'s awareness and understanding of the U.S. Attorney's Office for the Southern District of New York's criminal tax investigation of Fisher during its *Curcio* hearing, and which Lopez, Jr. knowingly waived his objection to related conflicts. *See* Jan. 19, 2011 Tr.

14

pursue. *Levy*, 25 F.3d at 157. He instead relies on his subjective belief that Fisher was preoccupied or too busy with the disciplinary proceedings to provide effective assistance, without articulating any specific resultant prejudice. Such conclusory statements cannot establish an actual or potential conflict. *See Williams*, 372 F.3d. at 106. This is especially so where Lopez, Jr. was asked probing questions about Fisher's ongoing criminal investigation by the U.S. Attorney's Office, a far more serious matter than a disciplinary action.

The Court rejects Lopez, Jr.'s claim that any conflict existed by virtue of Fisher's concurrent disciplinary proceedings, and rejects the ineffectiveness claim on this ground.

### 4. Failure to Object to Jury's Access to Recorded Phone Call Transcripts and to Request Cautionary Instruction

Lopez, Jr. claims that Fisher was ineffective for failing to object to the provision of English-language transcripts of Spanish-language recordings of conversations between "AM" and Lopez, Sr., introduced at trial and requested by the jury during deliberation, and to request a cautionary instruction. *See* Lopez, Jr. Br. at 9–11.

But "for purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation." *United States v. Neresian*, 824 F.2d 1294, 1322 (2d Cir. 1987). Any objection by Fisher would likely have been futile, since "[t]ranscripts of tape-recorded conversations may be given to a jury in a criminal trial for the purpose of aiding the jury in following along if certain precautions are taken to ensure accuracy," and "[w]here the recorded conversation is conducted in a foreign language, an English language transcript may be submitted to permit the jury to understand and evaluate the evidence." *United States v. Ben-Shimon*, 249 F.3d 98, 101 (2d Cir. 2001) (citations omitted); *see also United States v. Marin*, 513 F.2d 974, 977 (2d Cir. 1975) (permitting Spanish-to-English transcripts recorded conversations

15

into jury room). Lopez, Jr. has not showed that Fisher's failure to object or request a cautionary instruction constituted unreasonable professional conduct; nor has he even asserted that the transcripts were inaccurate or erroneous. *See United States v. Montilla*, 85 Fed. App'x 227, 230 (denying ineffectiveness claim based on counsel's stipulation to admission of wiretap conversation transcripts where petitioner did not show any prejudicial errors).

Further, the Court concludes that the "evidence at trial regarding [Lopez, Jr's] guilt was overwhelming and that a limiting instruction . . . would not have altered the outcome of this case." *Baran v. United States*, 160 F. Supp. 3d 591, 602 (S.D.N.Y. 2016) (denying ineffectiveness claim even if counsel's decision not to seek limiting jury instruction was erroneous).

The Court thus rejects Lopez, Jr.'s claim that Fisher was ineffective by failing to object to the provision of transcripts and to request a cautionary instruction.

### 5. Failure to Properly Investigate and Call "AM" as Witness

Lopez, Jr. claims that Fisher was ineffective in failing to call "AM" at trial. He argues that Fisher's multiple requests made at trial for the Government to produce "AM", which this Court rejected as untimely, shows Fisher "was acutely aware of the import of ["AM"] and the need to secure him as a witness." Lopez, Jr. Br. at 12; *see* Trial Tr. at 951.

Even taking as true Lopez, Jr.'s contentions that Fisher's failure to call "AM" constituted sufficiently deficient representation, his claim fails to satisfy *Strickland*'s second requirement. *See Strickland*, 466 U.S. at 697. Lopez, Jr. contends that "AM" "would have been able to explain much of the dialogue in the conversations and its context" and "provide factual information that would have contradicted the evidence" introduced at trial. Lopez, Jr. Br. at 12. But "[a] defendant's conclusory allegations about the testimony of uncalled witnesses are

16

insufficient to demonstrate prejudice." *Green*, 1996 WL 665719, at \*3 (denying ineffectiveness claim where petitioner did not "describe in detail the testimony [uncalled witnesses] might have given, or substantiate the claim that they would in fact testify as proffered"). Lopez, Jr. fails to present any objective evidence establishing prejudice, *see Pham*, 317 F.3d at 182, and the Court rejects his claim that Fisher was ineffective in failing to call "AM" as a witness.

### 6. Failure to Raise Confrontation Clause Objection to Introduction of Calls Between "AM" and Co-Defendant Lopez, Sr. Regarding a Murder

Lopez, Jr. asserts that Fisher was ineffective for failing to raise a Confrontation Clause objection to the admission of recorded calls between "AM" and Lopez, Sr. regarding Lopez, Jr.'s involvement in a murder of another co-conspirator. Lopez, Jr. Br. at 12–13.

But "there can be no separate Confrontation Clause challenge to the admission of a co-conspirator's out-of-court statement . . . made in the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 183 (1987). Any such objection would have been meritless. *See Strickland*, 466 U.S. at 689; *Neresian*, 824 F.2d at 1322. Indeed, the Second Circuit rejected Petitioners' same challenge raised on appeal since "neither statements of the accused, nor of a confidential source, on a surreptitious recording qualify as 'testimonial' statements for the purposes of the Confrontation Clause." ECF 167 at 3. Moreover, this Court rejected co-defendants' oppositions to the introduction of such evidence; and deemed the evidence admissible as proof of the conspiracy and Lopez, Jr.'s leadership position. *See* Sept. 6, 2011 Tr. at 5, 44. Nor does Lopez, Jr. articulate any "objective evidence other than [his] assertions to establish prejudice." *Pham*, 317 F.3d at 182. The Court denies Lopez, Jr.'s claim that Fisher was ineffective in failing to object to the admission of these recorded calls.

17

### 7. Conveyance of Unreasonable Prognosis of Chance of Success at Trial and Inadequate or Lack of Advice of Potential Sentencing Exposure

Lopez, Jr. launches a barrage of assertions within this category. *See* Lopez, Jr. Br. at 13–15; Lopez, Jr. Reply at 14–18. In sum, he claims that Fisher consistently "expressed an unreasonably positive prognosis about his chances of winning at trial,"[7] Lopez, Jr. Br. at 14; "continued to push for a trial,"[8] Lopez, Jr. Reply at 15–16; inaccurately conveyed, misinformed, or completely failed to advise Lopez, Jr. of his applicable sentencing guidelines or potential sentencing exposure, Lopez, Jr. Br. at 15, Lopez, Jr. Reply at 16–17; and "failed to pursue any non-trial disposition" and or engage in any "meaningful discussions regarding a plea resolution" with Lopez, Jr. Lopez, Jr. Reply at 16.

Lopez, Jr. contends that Fisher's advice and repeated assurances of success "led to the rejection of and non-pursuit of any non-trial disposition." Lopez, Jr. Br. at 13. Lopez, Jr. claims that if only he had "been correctly advised" of his sentencing exposure or of the benefits of

---

[7] Lopez, Jr. claims Fisher was "well-aware of the . . . mountain of threatening evidence against Mr. Lopez" and cites four "extraordinary events" that, in his mind, should have led Fisher to provide a different, less positive, outlook. Lopez, Jr. Br. at 13–14. These include: (1) the Government's statement of intent to file a 21 U.S.C. § 851 notice seeking an enhanced penalty if a plea agreement were not reached, which it did on August 11, 2011; (2) the Government's rejection of Fisher's request for dismissal or a more favorable plea offer; (3) the Government's motion *in limine* to admit the uncharged murder evidence; and (4) the MCC Recordings disclosure. *See id.*

[8] Lopez, Jr. urges that "there was an element of a financial conflict afoot that may have" affected Fisher's advice, Lopez, Jr. Reply at 16, as demonstrated by the fact that Fisher "repeatedly requested additional legal fees." Lopez, Jr. Ex. A ¶ 13. This apparently refers to a letter agreement sent by Fisher to Lopez, Jr., which Lopez, Jr. signed, apprising him of the "potential importance and value" of "certain tape recordings that a cooperator against you in this current prosecution claims to have made secretly during his conversations with agents working with him in the case," and estimating fees of $25,000 to purchase the tapes. *See* Lopez, Jr. Ex. E. Fisher, however, "stress[es] clearly that I may not be able to purchase the tapes . . . [a]nd, if I succeed . . . it may well be that my anticipations of the Government reaction are wrong. In other words, these additional fees may not be necessary." *Id.* But, as another case involving Fisher held, "even assuming [Fisher's] behavior [in requesting money from defendant-petitioner to purchase documents] was unethical, the conduct does not relate to the constitutionality of [his] representation." *United States v. Noorzai*, 953 F. Supp. 2d 499, 513 (S.D.N.Y. 2013) (denying § 2255 petition as it "is not the appropriate mechanism to raise [a fee dispute] claim, as such allegations do not call into question the constitutionality or legality of [defendant-petitioner]'s sentence").

pleading guilty, "there was a reasonable probability that he would not have proceeded to trial and would have entered a guilty plea." Lopez, Jr. Br. at 15. His subsequent affidavit bolsters this assertion: "[h]ad I been adequately represented, I would not have proceeded to trial." Lopez, Jr. Aff. ¶ 12.

First, Lopez, Jr.'s allegations that Fisher did not pursue a non-trial disposition are contradicted by his own papers describing Fisher's August 25, 2011 meeting with the Government, wherein Fisher "requested dismissal of the pending charges or a favorable plea offer," which the Government rejected. Lopez Br. at 14 (quoting Gov't Supp. Appeal Br. at 5–6).

Second, Lopez, Jr.'s suggestion that he would have accepted a plea deal but for Fisher's advice and "continued [] push[es] for a trial," Lopez, Jr. Reply at 15, is contradicted by the Government's submission that no plea offer was ever made. Gov. Mem. at 34–35. Moreover, plea deals are left to the discretion of prosecutors, not attorneys, and Lopez, Jr. was not entitled to receive a plea bargain. *See United States v. Fernandez-Dilone*, 668 F. Supp. 245, 249 (S.D.N.Y. 1987); *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

Finally, to the extent Lopez, Jr. alleges that, but for Fisher's overly optimistic advice, he would have pled guilty independent of any deal, such claim also fails, even assuming such advice was sufficiently deficient. To show *Strickland* prejudice, a petitioner must demonstrate "a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial." *Raysor*, 647 F.3d at 495. The Second Circuit generally "requires some objective evidence other than defendant's assertions" that he would have pled guilty, such as a "significant sentencing disparity" between that presented in a rejected plea offer and that imposed in an actual sentence after a trial conviction. *Pham*, 317 F.3d at 182–83; *see also*

19

*Puglisi*, 586 F.3d at 217. Lopez, Jr. provides no objective evidence either that he would have pled guilty or that Fisher did not advise him of his sentencing exposure. He instead relies on his own unsubstantiated allegations and sworn statements from himself, his sister, and a friend. *See* Lopez, Jr. Ex. A; Ex. C; Ex. D. "[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible." *Purdy v. Zeldas*, 337 F.3d 253, 259 (2d Cir. 2003). Moreover, Lopez, Jr.'s allegations are rebutted by his failure, at any time until now, to ever suggest or express a desire to plead guilty, or assert that Fisher misled him regarding his sentencing exposure or urged him to proceed to trial. Nor does Lopez, Jr. articulate what his sentencing exposure would have been had he pled guilty, further failing to "produce[] or identif[y] evidence sufficient to show, or permit an inference of, a significant [sentencing] disparity." *Puglisi*, 586 F.3d at 217. Indeed, Lopez, Jr.'s statements at his sentencing further undermine his contentions: "I decided to go to trial knowing that I'm exposed to face my natural life in prison . . . I maintain my innocence of what the government charged me with." Lopez, Jr. Sentencing Tr. 24:23–25:1. His present assertions are contradicted by the record and not entitled to any presumption of validity. *See Puglisi*, 586 F.3d at 214.

Lopez, Jr.'s self-serving allegations are not credible, and the Court rejects his suggestion that, but for Fisher's purportedly inadequate representation, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

\* \* \*

In sum, Lopez, Jr. has failed to establish that Fisher's performance was deficient, let alone so deficient as to fall below objective standards of reasonableness, or that, but for Fisher's ineffective assistance, the result of his proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. Consequently, his petition is denied without a hearing, since none is necessary.

20

Additionally, Lopez, Jr.'s motions for leave to amend and supplement his pleadings

pursuant to Fed. R. Civ. P. 15 are denied as moot and/or futile. ECF 195; ECF 197. He seeks to

add additional facts that would show, he argues, that had Fisher requested a continuance, he

would have discovered that the Government improperly learned of Lopez, Jr.'s involvement in

the uncharged murder through the MCC Recordings. *See* ECF 197 at 3–4. But this argument is

flatly contradicted by the relevant cooperating witness' testimony at trial that he disclosed this

information to the Government's "Trial Team" in the summer of 2011, months before the MCC

Recordings. *See* Trial Tr. at 453. Moreover, as explained in detail above, the "Trial Team" did

not have improper access the MCC Recordings, and both this Court and the Second Circuit

determined that no prejudice to Lopez, Jr. resulted therefrom.

## CONCLUSION

For all of the foregoing reasons, the Court DENIES Petitioners' § 2255 motions, and

DENIES Lopez Jr.'s subsequent motions to amend. As Petitioners have not "made a substantial

showing of the denial of a constitutional right," a certificate of appealability will not issue. 28

U.S.C. § 2253(c)(2). The Clerk of Court is directed to terminate all pending motions and close

this case.

Dated: New York, New York
     April 20, 2017

SO ORDERED

PAUL A. CROTTY
United States District Judge

Copies mailed to:

Fabio Morel, Reg. No. 14558-057
FCI Danbury
Federal Correctional Institution
Route 37
Danbury, CT 06811

Amaury Lopez Jr.
c/o Edward John Rymsza Esq.
Miele & Rymsza Esq.
36 West Fourth Street
Williamsport, PA 17701